## Given v. The State.

[No. 19,945. Filed March 20, 1903. Rehearing denied May 13, 1903.]

GAS AND OIL WELLS.—*Waste of Gas.—Strict Construction of Statute.*— The act of March 4, 1893, making it a penal offense to permit gas or oil to escape for a longer period than two days next after the same has been struck, is to be literally construed, since there is nothing in the act itself to show that two days is not sufficient time in which to confine such gas and oil. *pp. 554, 555.*

SAME.—*Escape of Natural Gas.—Literal Construction of Statute.*—In a prosecution for permitting the escape of natural gas in violation of the act of March 4, 1893 (Acts 1893, p. 300), the evidence showed that a well was being drilled for oil, and that after gas was struck the drilling was continued until oil was found; that at any time after the gas began to flow into the well and to escape from it, the gas might have been confined in the well by filling the well with water, and the operation continued until oil was struck, without inconvenience. *Held,* that there was no necessity for more than the statutory time of two days in which to confine the gas, and no absurdity, injustice or oppression would result from a literal construction of the statute. *pp. 554-556.*

SAME.—*Escape of Natural Gas.—Title and Preamble of Act.—Construction.*—The act of March 4, 1893, making it a penal offense to permit the escape of natural gas or oil for a longer period than two days next after the same has been struck, has the following title: "An act concerning the sinking, safety, maintenance, use and operation of natural gas and oil wells, prescribing penalties, and declaring an emergency." The following is the preamble: "Whereas, great danger to life and injury to persons and property is liable to result from the improper, unsafe, and negligent

Given *v*. State.

sinking, maintenance, use and operation of natural gas and oil-wells; therefore," etc. *Held*, that the public safety and not the waste of gas was the main object of the statute. *p. 556.*

CONSTITUTIONAL LAW.—*Police Power.*—*Public Safety.*—*Gas-Wells.*—If the natural gas escaping from wells is dangerous to persons and property in the vicinity, the legislature, in the exercise of its police power, has the right to regulate the sinking and casing of wells. *pp. 556, 557.*

SAME.—*Legislation for Public Safety.*—*Deprivation of Property.*—A legislative act for the protection of the public is not invalidated because it results in the deprivation of property. *p. 557.*

STATUTES.—*Construction as to Cases Arising Subsequent to Amendment.*—Where a statute has been amended it must be treated, in cases arising subsequent to the amendment, as if it had been enacted at the date of the amendment. *p. 557.*

APPEAL.—*Failure to Comply with Court Rules as to Brief.*—*Dismissal.*—The failure of appellant to comply with the rule of the Supreme Court requiring separate statements in his brief of propositions relied upon, together with the authorities relied on, is a cause for dismissal of the appeal. *p. 557.*

From Grant Circuit Court; *H. J. Paulus*, Judge.

Edward Given was convicted for permitting the escape of natural gas in violation of the act of March 4, 1893, as amended by the act of February 22, 1899, and he appeals. *Affirmed.*

*J. A. Hindman* and *M. M. Powell*, for appellant.

*C. W. Miller*, Attorney-General, *C. C. Hadley*, *W. C. Geake* and *E. D. Salsbury*, for State.

DOWLING, J.—The appellant was prosecuted upon affidavit and information for an alleged violation of the following statute: "That it shall be unlawful for any person, firm or corporation having possession or control of any natural gas or oil-well, whether as a contractor, owner, lessee, agent or manager, to allow or permit the flow of gas or oil from any such well to escape into the open air, without being confined within such well or proper pipes, or other safe receptacle, for a longer period than two days next after gas or oil shall have ben struck in such well. And thereafter all such gas or oil shall be safely and securely confined in such

well, pipes or other safe and proper receptacles." "Any person violating any provision of this act shall be guilty of a misdemeanor, and upon conviction thereof shall be fined in any sum not less than $20, nor more than $200, to which may be added imprisonment in the county jail not less than ten days nor more than sixty days; and each day during which such violation shall continue shall constitute a separate offense." §§7510, 7512 Burns 1901, Acts 1893, p. 300, Acts 1899, p. 82. Upon a trial by jury, the appellant was found guilty of the misdemeanor charged in the information, and a fine of $20 was assessed against him. From that judgment he appeals.

The only error assigned is upon the ruling of the court on the motion for a new trial.

Counsel for appellant claim that both the proper construction of the statute above set out and its constitutionality are in question and duly presented, and, therefore, that the jurisdiction of this cause is in this court. The Attorney-General denies that any question of statutory construction is involved here, because, as he asserts, the statute is free from ambiguity. He also insists that the question of its constitutionality is not duly presented, for the reason that the record does not show that the appellant is prejudiced in any manner by the judgment upholding it.

It is apparent, however, that there is in this case a real controversy as to the meaning of §1 of the act above set out. On the one hand, a literal construction is insisted upon; while, on the other, it is claimed that a liberal interpretation is necessary to avoid absurdities, injustice, and oppression. *Church of the Holy Trinity* v. *United States,* 143 U. S. 457, 12 Sup. Ct. 511, 36 L. Ed. 226. The appellant contends that, if the construction advocated by the Attorney-General is adopted, it will result in a deprivation of private property without due process of law. *Ohio Oil Co.* v. *Indiana,* 177 U. S. 190, 209, 20 Sup. Ct. 576, 44 L. Ed. 729. The State answers that, even if this is true, the appel-

lant can not object to the law on that account, because he is prosecuted as an agent only, and that the property affected belongs, not to him, but to his principal. We are of the opinion that enough is disclosed by the record to warrant this court in assuming jurisdiction of the appeal.

The principal controversy hinges upon the question whether the escape of natural gas from the well into the open air, with the permission of the well owner or his agent, for a longer period than two days after gas has been struck in such well, may be excused on the ground that the proprietor of the well was boring for oil, and that the completion of the well as an oil-well could not, with the best tools and appliances, and the employment of experienced and skilful workmen, be effected within the time fixed by the statute. This question in various forms is presented upon the instructions given by the court, and by others tendered by the appellant, but which the court refused to give.

It is admitted by counsel for appellant that, if a literal interpretation is to be given to the statute, and if the first section of the act of 1893, *supra,* is not subject to any constitutional objection, the appellant was properly adjudged guilty of the offense charged in the information. The argument in support of the views of the appellant is that a literal construction of the statute would be unreasonable and oppressive, contrary to the intention of the legislature, and destructive of valuable property rights. None of these grounds of objection appears upon the face of the statute. For all that is shown by the act itself, a period of two days after gas is struck may be amply sufficient to confine the gas within the well, or in pipes, or in some other safe receptacle.

Nor is it shown by the evidence that the gas could not have been so confined by the appellant within the time fixed by the statute, if he had seen fit to confine it. It seems that the well from which the gas was permitted to escape was being bored for oil. After the gas was struck, the operation

of sinking the well was continued until a flow of oil was obtained. There was no evidence that the gas-bearing rock or sand could not have been penetrated some considerable distance, and the work of confining the gas completed, within two days from the time when gas was first struck. On the contrary, it was shown that at any time after the gas began to flow into the well and to escape from it, the gas might have been confined in the well by filling the well with water, and the operation of boring or sinking the well continued without inconvenience. So far as the evidence shows, there was, therefore, no necessity for further time for confining gas in the well, and no absurdity, injustice, or oppression would result from a literal construction of the statute.

But it is said by counsel for appellant that the main purpose of the act, or the legislative intent, was the prevention of the waste of natural gas. This may have been one of the purposes of the act, although it nowhere very plainly appears. We may more reasonably presume that the intent of the legislature was to provide against the danger of explosions of the escaping gas, or the danger of fire to adjacent property, or even the danger of the contamination of the atmosphere. Indeed, the title of the act and its preamble indicate that the public safety was the main object of this statute. We cannot say that the dangers expected and feared from the escape of natural gas from the wells were unreal, or that the legislature manifested an undue solicitude for the public safety, or that it might have adopted other and less onerous methods to secure it. The public welfare is the supreme object of legislation, and in dealing with substances which are insidious in their movements, inflammable in a high degree, and which are liable to explode with the most disastrous consequences to life and property, the lawmaking power may exercise a wide latitude of discretion in its choice of methods and expedients without transcending the limits of its constitutional authority. If natural gas escaping from the well was dangerous

to persons and property in the vicinity, the legislature, in the exercise of its police power, had the right to regulate the sinking and casing of wells, and to prohibit the owner or person in charge from permitting the escape of gas therefrom. And, even if such legislation resulted in the deprivation of property, this result would not invalidate the measures adopted for the protection of the public.

The instructions complained of coincided with the views we have expressed, and, in our opinion, were unobjectionable. Those asked for by the appellant were wholly inconsistent with our ideas of the law of the case.

The evidence as to the condition of the gas, and the situation of the gas fields of this State in 1893, was properly excluded. It could have been admitted only upon the theory that the act must be interpreted in connection with those conditions, and that its construction must be controlled by the circumstances then surrounding the business of sinking and maintaining wells. However this may be, as a rule of construction in some cases, it has no application here. The act of 1893 was amended by the act of 1899 in a most important particular, and must be treated in cases arising subsequent to the amendment as if it had been enacted at the date of the amendment. *Walsh* v. *State, ex rel.,* 142 Ind. 357, 33 L. R. A. 392; *Pomeroy* v. *Beach,* 149 Ind. 511. But, if admitted, this evidence could not have affected the result of the trial.

The appellant has failed to comply with rule twenty-two of this court, which requires a separate statement of the propositions or points, "together with the authorities relied on in support of them." The appeal might have been dismissed for this violation of the rule, but, while we have not imposed any penalty in the present case, we wish here to emphasize the importance of an observance of this rule, and to indicate to counsel the probable consequences of a disregard of its requirements.

We find no error. Judgment affirmed.